UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CHRISTOPHER C. CLARK,

                            Plaintiff,                               16-cv-7744 (PKC)

      -against-                                                OPINION
                                                                         AND ORDER

POLICE OFFICER CRAIG SIKORSKI,

                            Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Christopher C. Clark, proceeding pro se, brought various claims against the City of New York, former New York Police Department ("NYPD") Commissioner William Bratton, and three members of the NYPD—Officer Craig Sikorski, Sergeant Michael Alfieri, and Detective Stanley Dash—arising out of his September 2014 arrests and subsequent detention and prosecution. In a prior Opinion and Order, the Court dismissed all state law claims against all defendants, and dismissed the 42 U.S.C. § 1983 claims against all defendants except for the false arrest and malicious prosecution claims against Officer Sikorski. (Opinion and Order of Sept. 13, 2018 (Doc 80).) Officer Sikorski, the only remaining defendant, has moved for summary judgment. (Doc 91.) For the reasons explained, defendant's motion will be granted.

SUMMARY JUDGMENT STANDARD

        Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court must "construe the facts in the light most favorable to

the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted).

It is the initial burden of the movant to come forward with evidence on each material element of his claim or defense sufficient to entitle the movant to relief as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets his burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248). While the Court affords "special solicitude" to pro se litigants, Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988), "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. Kulak v. City of N.Y., 88 F.3d 63, 71 (2d Cir. 1996); see also Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002) (a nonmovant cannot rely on "conclusory statements or mere allegations . . . . The nonmoving party must go beyond the pleadings . . . .").

Local Rule 56.1 of this Court requires a party moving for summary judgment to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a) (requiring submission of a "Rule 56.1. Statement"). The nonmoving party must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." Local Rule 56.1(b). Where a moving party seeks summary judgment against

a pro se litigant, Local Rule 56.2 requires the moving party to give the pro se nonmovant notice of the Rule 56.1 requirement. Local Rule 56.2. Pro se litigants are not excused from the formalities of summary judgment motions, including filing a Rule 56.1 Statement. Frye v. Lagerstrom, No. 15 Civ. 5348 (NRB), 2019 WL 7168806, at *2 (S.D.N.Y. Dec. 23, 2019); see also Belpasso v. Port Auth. of N.Y. & N.J., No. 07 civ. 3627 (SHS) (DF), 2009 WL 10703182, at *9 (S.D.N.Y. Sept. 17, 2009) (R. & R., Freeman, Mag. J.), adopted by 2009 WL 10703181 (S.D.N.Y. Sept. 30, 2009) (Stein, J.). Even where a pro se plaintiff fails to submit a formal Rule 56.1 Statement, courts may still consider the plaintiff's arguments supported by evidentiary submissions and construe them "to raise the strongest arguments that they suggest." Frye, 2019 WL 7168806, at *2 (internal quotation marks and citation omitted); see also Tavares v. N.Y.C. Belleview Hosp., No. 13-cv-3148 (PKC) (MHD), 2015 WL 7736544, at *1 (S.D.N.Y. Nov. 30, 2015).

Despite an order from Magistrate Judge Parker explicitly stating that failure to respond to defendant's Rule 56.1 Statement may lead the Court to take defendant's factual statements as true (Doc 88) and the Local Rule 56.2 notice defendant provided to plaintiff regarding Rule 56.1 requirements (Doc 92), Clark has not responded to defendant's Rule 56.1 Statement. The Court bases its summary judgment decision not on Clark's failure to submit a Local Rule 56.1 Statement, but on his failure to come forward with evidence that would permit a reasonable trier of fact to find in his favor.

BACKGROUND

On August 22, 2014, Officer Sikorski received a radio call informing him of a slashing that occurred at Washington and Little West 12th Streets in Manhattan, New York. (Def. 56.1 Statement ("Def. 56.1") ¶ 1; Sikorski Aff. (Doc 95) ¶¶ 4-5.) A security guard at the

Standard Hotel, who had observed the slashing, called 911. (Scheiner Decl. (Doc 110-1), Ex. I.) The security guard described the assailant as a black male, about 6'1" in height, 215 pounds, and wearing a baseball cap and jeans. (Id. at 2:15-2:40.) Officer Sikorski arrived at the scene and found the slashing victim, Gilberto Miranda, with a 4-5 inch laceration on his face. (Def. 56.1 ¶¶ 2-4; Doc 95 ¶ 5.) Mr. Miranda stated that the person who slashed his face also stole his cell phone. (Def. 56.1 ¶ 3; Doc 95 ¶ 7.) Mr. Miranda described the individual who had slashed his face and stolen his cell phone as a black man, 30-40 years of age, 6'1" to 6'2" in height, approximately 160 pounds, wearing a beige baseball cap and blue jeans. (Def. 56.1 ¶ 5; Doc 95 ¶ 8.) An ensuing canvass to locate the perpetrator was unsuccessful. (Def. 56.1 ¶¶ 6-8; Doc 95 ¶ 11.) In a follow-up interview at the hospital, Mr. Miranda told the interviewing detective that the perpetrator was a black man, between 30-40 years old, weighing about 160 pounds. (Doc 110-1, Ex. H.)

Officer Sikorski relayed information about the slashing incident to an informant with whom he had worked previously. (Def. 56.1 ¶ 9; Doc 95 ¶ 12.) This informant had provided Officer Sikorski with information resulting in three drug possession and assault-related arrests. (Def. 56.1 ¶ 10; Doc 95 ¶ 15.) The informant told Officer Sikorski that he was familiar with the slashing incident, that the incident arose out of a drug-related dispute, and the informant knew the individuals involved. (Def. 56.1 ¶ 9; Doc 95 ¶ 13.) On September 26, 2014, approximately one month after the slashing-robbery incident, the informant contacted Officer Sikorski with a tip that the perpetrator was on West 14th Street between 8th and 9th Avenues in Manhattan. (Def. 56.1 ¶ 11; Doc 95 ¶¶ 14-16.) Officer Sikorski met the informant at that location, and the informant identified Clark as the perpetrator of the slashing and robbery. (Def. 56.1 ¶ 12; Doc 95 ¶ 17.) Officer Sikorski observed Clark, as identified by the informant, as a

black male of 30-40 years of age, standing at approximately 6'2", weighing approximately 210 pounds, and wearing a beige cap and blue pants. (Def. 56.1 ¶ 13; Doc 95 ¶ 18.)

Officer Sikorski then stopped Clark, and asked him if he had identification and whether he had anything on his person of which Officer Sikorski should be aware. (Def. 56.1 ¶ 17; Doc 95 ¶¶ 20-21.) Clark told Officer Sikorski that he was carrying a knife, and Officer Sikorski recovered from Clark's waistband a kitchen knife with a 6-8 inch blade. (Def. 56.1 ¶ 18; Doc 95 ¶ 22.) When checking Clark's identification, Officer Sikorski also recovered from Clark's wallet what appeared to be two small quantities of cocaine; it was white and powdery, and packaged in a manner consistent with cocaine. (Def. 56.1 ¶ 21; Doc 95 ¶¶ 23, 25.) Officer Sikorski arrested Clark for possession of the knife and the apparent cocaine. (Def. 56.1 ¶ 22; Doc 95 ¶ 26.) Clark was then transported from the scene of the arrest to the 6th Precinct. (Doc 95 ¶ 27.) On their way to the precinct, without prompting or questioning by Officer Sikorski, Clark stated that he did not know anything about a slashing. (Def. 56.1 ¶ 23; Doc 95 ¶ 28.)

When Officer Sikorski conducted another search of Clark at the precinct, Officer Sikorski recovered marijuana from Clark's person. (Def. 56.1 ¶ 24; Doc 95 ¶ 29.) Officer Sikorski also reviewed Clark's criminal history. (Def 56.1 ¶ 25; Doc 95 ¶ 30.) Officer Sikorski completed Clark's arrest paperwork, listing charges of criminal possession of a weapon in the third degree, criminal possession of a controlled substance in the seventh degree, and unlawful possession of marijuana. (Def. 56.1 ¶ 26; Doc 95 ¶ 31; Akina Decl. (Doc 96), Ex. B.)

During a lineup conducted on September 26, 2014, Mr. Miranda identified Clark as the person who had slashed his face and stolen his phone on August 22, 2014. (Def. 56.1 ¶ 28; Doc 95 ¶ 37.) There is no evidence that Officer Sikorski was involved in the lineup;

Detective Stanley Dash informed Officer Sikorski of the lineup results.[1]  (Doc 95 ¶ 37.)
Detective Dash, who was the lead detective on the slashing and robbery incident, then arrested
Clark for robbery in the second degree.  (Def. 56.1 ¶ 29; Doc 96, Ex. C.)  A criminal complaint
prepared by the Office of the District Attorney charged Clark with assault in the first degree and
criminal possession of a controlled substance in the seventh degree.  (Def. 56.1 ¶ 30; Doc 96, Ex.
D.)  Detective Dash signed the criminal complaint charging Clark.  (Doc 96, Ex. D.)  Clark was
charged with neither criminal possession of a weapon nor unlawful possession of marijuana, two
of the three crimes for which Officer Sikorski arrested him.  (Id.; Def. 56.1 ¶ 31.)  Officer
Sikorski did not sign any charging instruments relating to or affidavits in support of Clark's
criminal prosecution for any crime.  (Def. 56.1 ¶ 33; Doc 95 ¶ 38.)

On November 20, 2014, a grand jury indicted Clark on the assault charge.  (Def.
56.1 ¶ 34; Doc 96, Ex. F.)  On November 21, 2016, Clark pled guilty to attempted assault in the
first degree, and on December 21, 2016, he received a sentence of five years' imprisonment and
five years of post-release supervision.  (Def. 56.1 ¶ 35; Doc 96, Ex. G.)  Clark was released from
prison on March 21, 2019.  (Order of July 31, 2019 (Doc 98).)

DISCUSSION

Clark's claims of false arrest and malicious prosecution are related, but distinct.
"Typically, a warrantless deprivation of liberty from the moment of arrest to the time of
arraignment will find its analog in the tort of false arrest . . . while the tort of malicious
prosecution will implicate post-arraignment deprivations of liberty."  Singer v. Fulton Cty.

---

[1] Detective Dash was also previously named as a defendant in this matter, but all claims against him have been dismissed.  (Doc 80.)

Sheriff, 63 F.3d 110, 117 (2d Cir. 1995). Each of Clark's remaining section 1983 claims against Officer Sikorski is addressed in turn.[2]

I. False Arrest Claim

"[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and [] it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest. Stated differently, when faced with a claim for false arrest, we focus on the validity of the arrest, and not on the validity of each charge." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (emphasis in original). Probable cause to arrest for any crime, not necessarily the offense charged, is a complete defense to a false arrest claim. Marcavage v. City of N.Y., 689 F.3d 98, 109-110 (2d Cir. 2012) (citing Jaegly); see also Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852 (internal quotation marks and citation omitted). In determining whether probable cause existed, courts look to the officer's knowledge at the time of and immediately preceding the arrest, and render a decision based on the "totality of the circumstances." Simpson v. City of N.Y., 793 F.3d 259, 265 (2d Cir. 2015) (internal quotation marks and citation omitted).

---

[2] The Court does not construe Clark's claims against Officer Sikorski to include false arrest or malicious prosecution based on the assault in the first degree charge; if Clark intended to include these claims against Officer Sikorski, then summary judgment is granted in Officer Sikorski's favor. Officer Sikorski did not arrest Clark on an assault offense. Detective Dash, who has been dismissed from this case, arrested Clark on charges of robbery and bias attack that "matured into the assault charge a few hours later." (Doc 80 at 7; Def. 56.1 ¶¶ 29-30.) This Court previously found that there was "no basis for concluding that Detective Dash did not have probable cause" for this arrest. (Doc 80 at 7.) Further, a grand jury later indicted Clark on the assault charge, and he pled guilty to the lesser offense of attempted assault in the first degree. Pleading guilty to a lesser offense bars false arrest and malicious prosecution claims based on the charged offense. Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986).

A.  Initial Arrest

Officer Sikorski had grounds for reasonable suspicion that Clark was the slashing-robbery perpetrator based upon the totality of information then known to him.  Officer Sikorski was therefore permitted to perform a stop and a frisk incidental to the stop.  Terry v. Ohio, 392 U.S. 1 (1968).  The recovery of a knife and what appeared to be drugs during the course of the valid Terry frisk provided probable cause to arrest Clark for possession of these items.  As a result, Clark's false arrest claim fails, and summary judgment on the false arrest claim will be granted.

In Terry, the Supreme Court held that law enforcement may conduct an investigatory stop of an individual based on reasonable suspicion that a crime has been or is being committed, and may then "frisk" the stopped individual if officers reasonably suspect that the individual is armed and dangerous.  Arizona v. Johnson, 555 U.S. 323, 326-27 (2009) (citing Terry).  A "reasonable suspicion" is more than a "hunch;" it requires "specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  Terry, 392 U.S. at 21-22; United States v. Bailey, 743 F.3d 322, 332 (2d Cir. 2014) (citing Terry).  Courts "take into account the totality of the circumstances and must evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training."  United States v. Compton, 830 F.3d 55, 61 (2d Cir. 2016) (internal quotation marks and citation omitted).  A tip provided by a known and historically credible informant has been held sufficient to establish reasonable suspicion for a Terry stop where the information provided "carrie[s] sufficient indicia of reliability."  Adams v. Williams, 407 U.S. 143, 147 (1972); United States v. Elmore, 482 F.3d 172, 179 (2d Cir. 2007) (citing Williams).  Such "indicia of reliability" are assessed based on the totality of the

circumstances, and include "the informant's basis of knowledge and veracity (i.e., how he knows and why we should believe him)." Elmore, 482 F.3d at 179.

The informant was known to Officer Sikorski and had previously provided him with information leading to three drug and assault-related arrests. (Def. 56.1 ¶ 10; Doc 95 ¶ 15.) The informant told Officer Sikorski that he was familiar with both parties to the slashing incident and knew that the incident arose out of a drug-related dispute. (Def. 56.1 ¶ 9; Doc 95 ¶ 13.) When the informant told Officer Sikorski that Clark, who he identified as the perpetrator of the slashing and robbery, was at a particular location close to where the slashing and robbery took place, the informant pointed out Clark to Officer Sikorski in person.[3] Officer Sikorski independently verified, by his own observation of Clark, that he matched the physical description of the perpetrator of the slashing and robbery. (Def. 56.1 ¶¶ 11-15; Doc 95 ¶ 18.)

Clark's submission makes much of alleging that Mr. Miranda's description of the person who slashed his face and stole his phone differed from Officer Sikorski's description of the same, and therefore this was not "credible evidence" that Clark was a "possible suspect." (Pl. Opp'n (Doc 109) at 2.) However, these descriptions do not conflict; they merely differ in their level of detail and in their approximations of Clark's weight. For example, Officer Sikorski stated that Mr. Miranda described the perpetrator as a black man, 30-40 years of age, 6'1"-6'2" in height, about 160 pounds, wearing a beige cap and blue jeans. (Doc 95 ¶ 8.) Later, when re-interviewed by another officer, Mr. Miranda described the perpetrator without providing details of his clothing, but still described him as a black man, 30-40 years of age, and about 160 pounds. (Doc 110-1, Ex. H.) When the informant identified Clark as the slashing and robbery perpetrator

---

[3] The Court notes that the informant's statements to Officer Sikorski would be considered hearsay. However, warrantless arrests may be based on hearsay where an informant's statements are "reasonably corroborated" by law enforcement. Illinois v. Gates, 462 U.S. 213, 241-42 (1983).

to Officer Sikorski on September 26, 2014, Officer Sikorski observed Clark as a black man, 30-40 years of age, approximately 6'2" in height and 210 pounds, wearing a beige cap and blue jeans.  (Def. 56.1 ¶ 13.)  This physical description also matched that provided by the security guard who called 911 on the night of the incident and described the assailant as a black male standing at about 6'1", 215 pounds, and wearing a baseball cap and jeans.  (Doc 110-1, Ex. I at 2:15-2:40.)  Based on the information provided to Officer Sikorski and the totality of the circumstances, it was reasonable for Officer Sikorski suspect that Clark had been involved in the slashing and robbery.  Therefore, Officer Sikorski's stop of Clark was permissible.  Clark has not submitted sufficient countervailing evidence to refute Officer Sikorski's version of events and supporting evidence.

Clark's submission contains nearly 20 pages of personnel records, many of which pertain to defendants who have already been dismissed from this case.  (See Doc 109 at 50-61.)  Officer Sikorski's personnel records (id. at 62-67) are immaterial to the instant motion.  Clark appears to contend that because Officer Sikorski has previously been a named defendant in other civil suits, and has received complaints related to arrests he has made, the Court should discredit Officer Sikorski's version of events here.  (Id. at 3.)  First, Officer Sikorski's personnel records would be inadmissible evidence.  Berkovich v. Hicks, 922 F.2d 1018, 1022-23 (2d Cir. 1991) (affirming district court's exclusion of police officer's prior complaint history on Rules 404(b) and 403, Fed. R. Evid. grounds).  To be admissible, such evidence "must share 'unusual characteristics' with the act charged or represent a 'unique scheme.'"  Id. at 1022 (citation omitted).  Here, based on the heavily-redacted history that Clark submitted, the Court can discern no such "unique scheme."  In addition to the inadmissibility of Officer Sikorski's personnel

history, the Court does not "weigh the evidence" or perform "credibility assessments" when deciding a motion for summary judgment. Weyant, 101 F.3d at 854.

Clark's own statement during the course of the stop provided a basis to conduct a frisk of his person. In response to a question by Officer Sikorski, Clark told Officer Sikorski that he was carrying a knife. (Def. 56.1 ¶¶ 17-18; Doc 95 ¶¶ 21-22.) This statement gives rise to a reasonable suspicion that Clark was armed and dangerous. Officer Sikorski's ensuing recovery of a kitchen knife with a 6-8 inch blade from Clark's waistband was thus proper.

Clark's possession of a kitchen knife with a 6-8 inch blade provided probable cause for Officer Sikorski to arrest him. New York City Administrative Code § 10-133(b) prohibits carrying or possessing, "in any public space, street, or park any knife which has a blade length of four inches or more." Courts in this Circuit have found possession of a knife sufficient to establish probable cause for an arrest. See, e.g., Morgan v. City of N.Y., No. 12–CV–704, 2014 WL 3407714, at *4 (E.D.N.Y. July 10, 2014) ("discovery of the four inch knife constituted probable cause, thereby defeating [p]laintiff's claims . . . [of] alleged false arrest and malicious prosecution."). That Clark was not ultimately charged with this violation of the New York City Administrative Code is immaterial; it is enough that Officer Sikorski had probable cause to arrest Clark for any offense. Marcavage, 689 F.3d at 109-110.

Officer Sikorski also had probable cause to arrest Clark for possession of what appeared to be cocaine. Officer Sikorski had a reasonable basis to ask Clark for his identification. It is proper for a police officer to ask an individual for identification, even without suspecting particular criminal activity. Florida v. Bostick, 501 U.S. 429, 434-35 (1991); I.N.S. v. Delgado, 466 U.S. 210, 216 (1984) ("[O]ur recent decision . . . plainly implies that interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute

a Fourth Amendment seizure."). During the course of reviewing Clark's identification in Clark's wallet, Officer Sikorski found what appeared to him, based on his training and experience, to be cocaine. (Def. 56.1 ¶¶ 19-21; Doc 95 ¶ 25.) As Clark's submission points out, laboratory results ultimately showed that the substance Officer Sikorski thought to be cocaine was not. (Doc 109 at 5; id. at 44.) However, the laboratory test results were prepared on July 30, 2015, approximately nine months after Clark's September 26, 2014 arrest. (Id. at 44.) Officer Sikorski's mistake of fact does not vitiate probable cause to arrest Clark for what Officer Sikorski reasonably believed to be cocaine. Williams v. Town of Greenburgh, 535 F.3d 71, 79 (2d Cir. 2008) ("[A] mistake about relevant facts . . . does not undermine the existence of probable cause."); Kent v. Thomas, 464 F. App'x 23, 25 (2d Cir. 2012) ("For false arrest claims, the probable cause inquiry focuses on the facts reasonably believed by the officers at the time of the arrest; even if it later turns out that the officers were mistaken, a mistake of fact would not undermine probable cause so long as their belief was objectively reasonable.").

Clark alleges, without pointing to any evidence or support, that "Defendants in this matter falsified evidence" and therefore baselessly stopped and frisked Clark. (Doc 109 at 6.) There is no evidence in the summary judgment record to support this conclusory assertion devoid of detail. The Court concludes that Officer Sikorski had probable cause to arrest Clark for possession of a knife and cocaine at the scene of a valid Terry stop and frisk, and Clark has not come forward with evidence that would permit a reasonable trier of fact to conclude otherwise.

B. Subsequent Search and Arrest at the Precinct

After transporting Clark to the 6th Precinct, Officer Sikorski conducted another search of Clark. (Def. 56.1 ¶ 24; Doc 95 ¶ 29.) Officer Sikorski recovered from Clark's person

what he believed to be a quantity of marijuana wrapped in a small piece of paper. (Def. 56.1 ¶ 24; Doc 95 ¶ 29.) Officer Sikorski's search of Clark at the precinct was proper. United States v. Edwards, 415 U.S. 800, 803 (1974) ("It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention."); United States v. Frankenberry, 387 F.2d 337, 339 (2d Cir. 1967) ("It is entirely proper and good police practice to make a more careful and thorough search of a person who has been arrested once he is brought to the police station."). Based on his training and experience, Officer Sikorski reasonably believed the substance recovered from Clark's person to be marijuana. (Doc 95 ¶ 29.) Laboratory results later confirmed the substance to be marijuana. (Doc 109 at 44.)

Once at the precinct, Officer Sikorski also reviewed Clark's criminal history. (Def. 56.1 ¶ 25; Doc 95 ¶ 30.) Officer Sikorski learned that Clark had several prior arrests, including two felony convictions and 43 misdemeanor convictions. (Def. 56.1 ¶ 25; Doc 96, Ex. A.) Officer Sikorski arrested Clark for violating New York Penal Law § 265.02(1) (criminal possession of a weapon in the third degree). (Def. 56.1 ¶ 26; Doc 96, Ex. B.) Penal Law § 265.02(1) provides that an individual is "guilty of criminal possession of a weapon in the third degree when [s]uch person commits the crime of criminal possession of a weapon in the fourth degree as defined in subdivision one, two, three or five of section 265.01, and has been previously convicted of any crime." Section 265.01(2) criminalizes possession of "any dagger, dangerous knife . . . or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another." While possession of a kitchen knife is not itself unlawful, under the circumstances, Officer Sikorski could reasonably conclude that this knife would be used as a weapon and not for the utilitarian purpose for which it was designed. Matter of Jamie

D., 453 N.E.2d 515, 517 (N.Y. 1983) (the "circumstances of possession . . . may permit a finding that on the occasion of its possession it was essentially a weapon rather than a utensil."); People v. Campos, 93 A.D.3d 581, 582 (1st Dep't 2012) (same, citing Matter of Jamie D). Officer Sikorski also arrested Clark for violations of Penal Law § 220.03 (criminal possession of a controlled substance in the seventh degree) and § 221.05 (unlawful possession of marijuana). (Def. 56.1 ¶ 26; Doc 96, Ex. B.)

Because Officer Sikorski had probable cause to arrest Clark for each offense charged in the September 26, 2014 arrest report (Doc 96, Ex. B), and Clark has not submitted evidence to create a genuine dispute as to the fact of probable cause, the Court will grant summary judgment in Officer Sikorski's favor on the false arrest claim. Further, because the Court concludes that Officer Sikorski had probable cause to arrest Clark, it does not decide the issue of qualified immunity. (See, e.g., Doc 93 at 9-10; Doc 110 at 6, 8.)

II. Malicious Prosecution Claim

Malicious prosecution requires: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello v. City of N.Y., 612 F.3d 149, 161 (2d Cir. 2010). In addition, when asserting a malicious prosecution claim pursuant to section 1983, a plaintiff must establish "a sufficient post-arraignment liberty restraint to implicate [his] Fourth Amendment rights." Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000). Clark makes the conclusory allegation that criminal prosecution was initiated against him, termination was in his favor, there was no probable cause to commence these proceedings, and defendant was motivated by actual malice. (Doc 109 at 5.) Mere recitation of the elements of the legal standard

is insufficient to defeat summary judgment. Gottlieb v. Cty. of Orange, 84 F.3d 511, 518 (2d Cir. 1996) (a party cannot defeat a summary judgment motion "by relying on the allegations in his pleading . . . or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible."). Clark's remaining malicious prosecution claims against Officer Sikorski each fail on at least one element of the legal standard.

        A. Criminal Possession of a Weapon and Unlawful Possession of Marijuana

There is no evidence in the record that a charging instrument was ever lodged against Clark for either possession of a weapon or unlawful possession of marijuana, nor does it appear that he was ever arraigned on any such charges. The charging instrument signed by Detective Dash lists two charges against Clark: (1) assault in the first degree, and (2) criminal possession of a controlled substance in the seventh degree. (Doc 96, Ex. D.) Absent arraignment of Clark on the possession of a weapon and marijuana offenses, there was no "initiation" of proceedings on these charges. "In malicious prosecution cases brought against police officers, plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints." Mitchell v. Victoria Home, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006); see also Swartz v. Isogna, 704 F.3d 105, 112 (2d Cir. 2013) (where police officer "swore out a complaint . . . and filed it in a criminal court, he commenced a criminal action."). There is no evidence that Officer Sikorski participated in the preparation or filing of a charging instrument against Clark for either of these offenses. In fact, Officer Sikorski states in his affidavit that he did not sign a complaint or a supporting affidavit related to Clark's prosecution. (Doc 95 ¶ 38.)

Further, an arrest without "legal process"—either pursuant to a warrant or an ensuing arraignment—is insufficient to state a deprivation of liberty that would implicate the

Fourth Amendment. Singer, 63 F.3d at 116-17. In Singer, the Second Circuit found that Singer's warrantless arrest was not a "predicate deprivation of liberty because it occurred prior to his arraignment and without a warrant, and therefore was not pursuant to legal process." Id. (internal quotation marks and citation omitted). The same is true here. Clark was arrested for possession of a 6-8 inch-blade knife and marijuana without a warrant, and was not arraigned on these charges. Clark has not come forward with evidence that would permit a reasonable trier of fact to conclude the contrary. Therefore, summary judgment in Officer Sikorski's favor is appropriate.

      B.  Criminal Possession of a Controlled Substance

The criminal possession of a controlled substance charge stands on procedurally different footing than the criminal possession of a weapon and unlawful possession of marijuana charges. The controlled substance offense was included in the criminal complaint signed by Detective Dash. (Doc 96, Ex. D.) In prior submissions to this Court, defendants stated that Clark was indeed arraigned on the charges in the criminal complaint. (Doc 73 at 3.) Therefore, a criminal proceeding was "initiated" against Clark on this charge.

However, it was not Officer Sikorski who initiated the proceeding, it was Detective Dash. Detective Dash signed the instrument that charged Clark with assault in the first degree and criminal possession of a controlled substance in the seventh degree. (Doc 96, Ex. D.) "To satisfy the first element of a malicious prosecution claim (that the defendant initiated or continued the criminal prosecution against the plaintiff), it must be shown that the defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Mitchell, 434 F. Supp. 2d at 227. No such showing has been made here with respect to Officer Sikorski and Clark's prosecution for the controlled substance charge. Officer Sikorski states in his affidavit that he never signed a criminal complaint or

- 16 -

affidavit in support of Clark's prosecution. (Doc 95 ¶ 38.) Even though a criminal prosecution was initiated against Clark on the controlled substance charge, Officer Sikorski was not the law enforcement official involved in this initiation.

The Court recognizes that an arresting officer may still be found to have "initiated" a prosecution where he "creates false information likely to influence a jury's decision and forwards that information to prosecutors," or where an officer "withholds relevant and material information." Mitchell, 434 F. Supp. 2d at 227 (internal quotation marks and citation omitted). To the extent Clark's submission contends that Officer Sikorski fabricated evidence and "falsifi[ed] documents," Clark offers no evidence in support of these allegations. (Doc 109 at 6.) Officer Sikorski, based on his training and experience, had a reasonable basis to believe that the substance Clark possessed was cocaine. Laboratory test results showing that the substance was not in fact cocaine were not prepared until July 30, 2015 (Doc 109 at 44), and there is no evidence that Officer Sikorski had any involvement in the prosecution of Clark after the events of September 26, 2014.

The Court concludes that no reasonable trier of the facts could conclude that Officer Sikorski initiated or continued the prosecution of Clark, and therefore, summary judgment in Officer Sikorski's favor on the malicious prosecution claim is proper.

CONCLUSION

For the reasons explained, Officer Sikorski's motion for summary judgment is GRANTED. The Clerk is directed to terminate the motion (Doc 91) and enter judgment for the

defendant.  Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Opinion and Order would not be taken in good faith and in forma pauperis status is denied.

       SO ORDERED.

                                            P. Kevin Castel
                                United States District Judge

Dated: New York, New York
      January 29, 2020